UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

In re:

MANOWN ENGINEERING CO., INC.          Case No. 18-50205-KKS

                                                 Chapter 7

      Debtor.                              /

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION SUSTAINING THE CHAPTER 7 TRUSTEE'S *OBJECTION TO CLAIM NO. 4 FILED BY SCOTT D. HALL ATTORNEY AT LAW* (ECF No. 96)

THIS MATTER came before the Court for a final evidentiary hearing on March 2, 2021 on the Chapter 7 Trustee's *Objection to Claim No. 4 Filed by Scott D. Hall Attorney at Law* ("Objection," ECF No. 96). The Court issues these Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52(a)(1) applicable by Fed. R. Bankr. P. 7052.[1]

Debtor, Manown Engineering Co., Inc. ("Manown") filed a voluntary Chapter 7 Petition on July 23, 2018.[2] Mary W. Colon was appointed Chapter 7 Trustee ("Trustee").[3] On October 1, 2018, attorney Scott D. Hall filed Claim 4-1 in the amount of $168,218.82 ("Claim 4").[4]

---

[1] Fed. R. Bankr. P. 7052 is applicable in this matter pursuant to Fed. R. Bankr. P. 9014(c).
[2] *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, ECF No. 1.
[3] *Notice of Chapter 7 Bankruptcy Case*, ECF No. 3.
[4] *Claim #4 filed by Scott D. Hall, Attorney at Law*.

SK

Despite its title, Claim 4 is a claim of Kim Frazier ("Frazier") based in part on a pre-petition judgment awarded to Frazier against Manown and others, and an alleged settlement of that judgment in exchange for money from the sale of certain assets.

On September 3, 2020, the Trustee filed the Objection to Claim 4 on the basis that Frazier recorded a Satisfaction of Judgment on October 27, 2017, and had not submitted evidence of any new obligation for the debt represented by the judgment.[5] Frazier filed a response to the Objection and a memorandum of law in support of Claim 4.[6] At the conclusion of the final evidentiary hearing the Court requested the parties to submit proposed findings of fact and conclusions of law, which they have.[7] Having carefully considered the pleadings, evidence, and arguments of counsel, as well as the proposed findings of fact and conclusions of law submitted by both parties, the Court finds that the Trustee's Objection to Claim 4 is due to be sustained.

---

[5] ECF No. 96, p. 2.
[6] *Response to and Objection to Trustee's Objection to Claim No. 4*, ECF No. 97; *Claimant's Memorandum of Law in Support of Claim No. 4*, ECF No. 98.
[7] *Findings of Fact and Conclusions of Law*, ECF No. 123; *Chapter 7 Trustee's Proposed Findings of Fact and Conclusions of Law*, ECF No. 124.

2

## FINDINGS OF FACT

Manown and Frazier had a history of transactions.[8] After Manown and non-filing third parties defaulted on obligations to Frazier, Frazier filed suit against Manown and others in the U.S. District Court for the Middle District of Tennessee.[9] On September 1, 2017, that court entered a default judgment in the amount of $221,384.66 in favor of Frazier and against Manown and its president Darwin Gilmore ("Gilmore"), and Advanced Concrete Tools ("ACT") ("Judgment").[10]

During 2017, Manown and ACT were in dire financial straits and contemplating bankruptcy.[11] Following entry of the Judgment, on or about September 22, 2017, Manown, Gilmore, and ACT entered into a contract with Frazier, Larry Steele, and Steele Group, LLC ("Steele Group") in an attempt to "salvage" some of Manown's technology and "clean up a financial mess with maximum benefit to the creditors . . . ."[12] This contract is evidenced by a written proposal by Larry Steele and a

---

[8] Trustee's Ex. 1, pp. 2–3, ECF No. 117-1. By stipulation of the parties, the Court admitted into evidence the Exhibits 1–18 submitted by the Trustee ("Trustee's Ex.," ECF No. 117) and Exhibit 19 submitted by Frazier ("Frazier's Ex.," ECF 119-14).
[9] *Joint Statement of Undisputed Facts*, ECF No. 120, ¶ 3.
[10] Trustee's Ex. 3, ECF No. 117-3; Trustee's Ex. 1, p. 2, ECF No. 117-1.
[11] Trustee's Ex. 4, pp. 2–3, ECF No. 117-4.
[12] *Id.* at 4.

series of emails between the parties.[13] The contract provided for Manown to sell its assets free and clear of Frazier's judgment lien.[14] To accomplish this, Steele Group agreed to pay $55,000.00 to Frazier in exchange for a satisfaction of the Judgment.[15] The contract essentially divided the assets into two parts: real property comprised of land and building, and personal property consisting of machines and equipment.[16] In furtherance of the contract, Manown, ACT, and Steele Group finalized an *Asset Purchase and Sale Agreement* and Steele Group paid $55,000.00 to Frazier and $100.00 to Manown.[17] Frazier's counsel acknowledged receipt of the $55,000.00 on October 27, 2017 and filed a Satisfaction of Judgment the same day.[18]

Under the terms of the contract, Gilmore was to "immediately" place Manown's land and building for sale with a realtor that specialized in commercial and industrial property.[19] If the real property remained

---

[13] Trustee's Ex. 4, ECF No. 117-4; Trustee's Ex. 5, ECF No. 117-5; Trustee's Ex. 7, ECF No. 117-7; Trustee's Ex. 9, ECF No. 117-9; Trustee's Ex. 10, ECF No. 117-10.
[14] Trustee's Ex. 4, pp. 7, 10, ECF No. 117-4.
[15] *Id.*
[16] According to Frazier, Trustee's Ex. 4 became the contract that "called for the sale of Debtor's assets, with a share or percentage of the net sales proceeds to be paid to Creditor Kim Frazier." ECF No. 123, p. 3.
[17] Trustee's Ex. 6, p. 8, ECF No. 117-6.
[18] Trustee's Ex. 7, ECF No. 117-7; Trustee's Ex. 8, ECF No. 117-8.
[19] Trustee's Ex. 4, p. 9, ECF No. 117-4.

4

unsold after 180 days on the market, "ownership of the property [would] transfer to the Banks."[20] If the real property were sold within the 180 days, Frazier was to receive a percentage of the net proceeds in excess of what Manown owed its lenders.[21] On September 22, 2017, Manown notified Frazier's counsel that it had selected a realtor and intended to move forward with the sale of its real property.[22] On November 2, 2017, Larry Steele reported to Frazier's counsel that Manown had listed its real property for sale at $300,000.00, as recommended by the listing realtor.[23]

As to the personal property, Steele's proposal provided that Gilmore would "immediately place all of the Manown machines and equipment for sale with brokers who can quickly and effectively monetize" those assets.[24] Like the real property, the personal property was to be sold within 180 days or auctioned.[25] Net proceeds from the sale of the personal property was to be split between Frazier and Gilmore.[26]

In a November 2, 2017 email, Larry Steele reported to Frazier's

---

[20] *Id.*
[21] *Id.*
[22] Trustee's Ex. 5, p. 3, ECF No. 117-5.
[23] Trustee's Ex. 9, pp. 2–3, ECF No. 117-9.
[24] Trustee's Ex. 4, p. 9, ECF No. 117-4.
[25] *Id.* at 9, ¶¶ 8, 11.
[26] *Id.* If the personal property was sold within 180 days, Frazier and Gilmore were each to receive 50%; if Manown auctioned personal property after 180 days, Frazier was to receive 70% and Gilmore 30%. *Id.*

counsel that Gilmore had met with an auction service and was "ready to proceed" with liquidating the personal property, but that Peoples South Bank was causing a delay in that process.[27] In the same email, Larry Steele reported that the auctioneer was requiring $15,000.00 up front, and asked if Frazier was willing to allow this to be paid from the proceeds of the auction ahead of the split of the proceeds to her and Gilmore.[28] There is no evidence that Frazier or her counsel responded to this request.

In March of 2018 Frazier's counsel and Larry Steele had another email exchange.[29] In response to Frazier's inquiry as to how the liquidation of the assets was going, Larry Steele reported that there was "an offer on the table for the purchase of the property and the machines."[30] Steele suggested that Frazier's counsel "encourage Gilmore to accept the offer" because a demand letter from People's South Bank indicated it was on the brink of commencing foreclosure.[31] There is no evidence that Frazier or her counsel acted on Steele's suggestion.

---

[27] Trustee's Ex. 9, p.3, ECF No. 117-9.
[28] *Id.*
[29] *Id.* at 2.
[30] *Id.*
[31] *Id.*

6

The only record of further written communications between Frazier's attorney and anyone on behalf of Manown is an email exchange of May 16, 2018, a little more than two (2) months before Manown filed its Chapter 7, in which Gilmore stated that the parties were "just now in the phase of dealing with the status of the assets and possible sale."[32] Frazier claims this statement proves that Manown breached the contract by failing to "immediately" place its machines and equipment for sale. But Gilmore's explanation of that statement at his 2004 examination, taken by Frazier's counsel, shows otherwise.[33] During that testimony, Gilmore explained that Manown had been unsuccessfully attempting to sell the assets for a while, but had begun discussions with an attorney about the situation because it was now "crunch time as to whether or not [Manown] had to cease operating due to lack of funds."[34]

Ultimately, Manown did not sell any of its assets before filing its Chapter 7 petition.

---

[32] Trustee's Ex. 10, p. 2, ECF No. 117-10.
[33] Frazier's Ex. 19, pp. 33–34, ECF No. 119-14.
[34] *Id.*

7

# CONCLUSIONS OF LAW

A properly filed proof of claim is *prima facie* evidence of its validity and amount.[35] A claim is deemed allowed unless a party in interest objects.[36] A party objecting to a claim bears the burden of presenting evidence that rebuts the validity and amount of the claim.[37] Once the objecting party meets its burden, the burden shifts to the claimant to establish the validity of the claim.[38]

The Trustee's evidence rebuts the validity of Frazier's claim because it shows that Manown did not materially breach the contract. Manown took required steps to sell the assets, but its efforts were unsuccessful. Once the Trustee met her burden of rebutting Frazier's claim, the burden shifted to Frazier to establish the validity of her claim. Frazier did not meet her burden of proof.

### Frazier proved she had a contract with Manown.

To prove the existence of a contract, a party must show: 1) an offer; 2) acceptance of the offer; 3) consideration; and 4) specification of the

---

[35] Fed. R. Bankr. P. 3001(f); *Whitney v. Dresser*, 200 U.S. 532, 535 (1906); *Condor Aerial, LLC v. Novus Cap. Grp., LLC (In re Prioria Robotics)*, Ch. 7 Case No. 18-10018-KKS, Adv. No. 19-01002-KKS, 2020 WL 4001031 at *4 (Bankr. N.D. Fla. July 10, 2020).
[36] 11 U.S.C. § 502(a) (2021).
[37] *In re Jeffrey L. Miller Invs., Inc.*, 610 B.R. 692, 702 (Bankr. M.D. Fla. 2019).
[38] *In re Winn-Dixie Stores, Inc.*, 418 B.R. 475, 476 (Bankr. M.D. Fla. 2009).

essential terms.[39] Frazier's evidence, comprised of correspondence, emails, actions and testimony, established an offer by Steele Group and acceptances by Manown, Frazier, and ACT. The essential terms of the contract were: 1) Steele Group was to pay $55,000.00 to Frazier and $100.00 to Manown in exchange for the assets; 2) Manown was to place its assets for sale; 3) if Manown sold it assets within a specified period Frazier and Gilmore were to receive a portion of net sale proceeds over and above the amount owed to Manown's lenders; and 4) Frazier would file a Satisfaction of Judgment to clear title to the assets being sold.

**Frazier failed to prove that Manown materially breached the contract.**

The evidence presented by Frazier falls short of proving a material breach by Manown. The unrefuted evidence shows that Manown complied with its contractual obligations to place its assets for sale.

To recover for a breach of contract, Florida law requires a party to establish a material breach and resulting damages.[40] A breach of contract is material "only if it goes to the essence of the contract."[41] "When one party to a contract commits a material breach, the nonbreaching party

---

[39] *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *St. Joe Corp. v. McIver*, 875, So. 2d 375, 381 (Fla. 2004)).
[40] *Id.* (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)).
[41] *In re Jeffrey L. Miller Invs., Inc.*, 610 B.R. at 704.

9

has the option to treat the breach 'as a breach of the entire contract – in other words, an entire or total breach.'"[42] A party like Frazier, seeking damages for a total breach, "may treat the contract as void and seek the damages that will restore him to the position he was in immediately prior to entering the contract."[43]

Both parties cite *Benkovitch v. Village of Key Biscayne*; Frazier in support of her claim that because Manown materially breached the contract her entire remaining judgment claim is resurrected, and the Trustee in support of her argument that only had Manown breached the contract would Frazier's claim be allowable.[44] *Benkovitch* supports only the Trustee's position.

In *Benkovitch*, the Chapter 11 debtor owned a home that she and her husband allowed to fall into disrepair; after years of imploring the debtor and her husband to fix the home the Village of Key Biscayne ("the Village"), obtained three orders imposing daily penalties and fines for the debtor's continued violations.[45] By the time the debtor filed Chapter 11,

---

[42] *Forbes v. Prime Gen. Contractors, Inc.*, 255 So. 3d 448, 451 (Fla. 2d DCA 2018) (quoting *Hyman v. Cohen*, 73 So. 2d 393, 397 (Fla. 1954)).
[43] *Id.* (quoting *Rector v. Larson's Marine, Inc.*, 479 So. 2d 783, 785 (Fla. 2d DCA 1985)).
[44] *Benkovitch v. Vill. of Key Biscayne, Fla.*, 778 F. App'x 711 (11th Cir. 2019) (this Court directed the parties to *Benkovitch* at the conclusion of the final evidentiary hearing); *see,* ECF Nos. 123, 124.
[45] *Benkovitch*, 778 F. App'x at 713.

10

she had accrued fines and penalties totaling $5 million.[46] During the Chapter 11, the debtor agreed to settle by paying the Village $89,000.00 in three installments and fixing the deficiencies on her home.[47] In exchange, the Village agreed to stop continuing accrual of the penalties and vacate the $5 million fine.[48] The debtor's case was converted to Chapter 7 and the debtor defaulted on the agreement with the Village: she neither paid the $89,000.00 nor corrected the deficiencies on her home.[49] The Village filed a proof of claim for the entire $5 million judgment to which the debtor objected.[50] The bankruptcy court overruled the objection and allowed the entire $5 million claim; the district court affirmed.[51] On appeal to the Eleventh Circuit, the debtor argued for the first time that the stipulation with the Village extinguished the $5 million dollar judgment claim.[52] The Eleventh Circuit did not buy this argument. Instead, the court found that because the debtor "materially

---

[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.* The Village also filed an adversary proceeding against the debtor seeking a determination of the dischargeability of the $5 million claim. *Id.*
[51] *Id.* The debtor asserted that the penalties and fines imposed by the Village were *in rem* liens on the property – which she no longer owned – not *in personam* claims against her. *Id.*
[52] *Id.* The debtor argued, in the alternative and among other things, that she did not breach the stipulation. *Id.*

11

breached the Stipulation," the Village was within its rights to reinstate its $5 million claim.[53]

In *Benkovitch,* the Village clearly proved that the debtor materially breached the settlement stipulation. Here, Frazier has not proven any such material breach by Manown. The contract between Manown and Frazier required Manown to attempt to sell its assets, which it did. The undisputed evidence shows that Gilmore met with an auctioneer to auction the equipment as early as November of 2017.[54] The evidence also shows that Manown listed its real property for sale shortly after the parties entered the contract. The equipment auction never took place because of a lack of funds and no authority from Frazier to advance the auctioneer's $15,000.00 fee out of the sale proceeds. The evidence also shows that Steele represented to Frazier that Manown had an offer to purchase its assets in May of 2018.

The contract between Frazier and Manown contains no provision *requiring* Manown to *sell* its assets; the contract only required it to try to

---

[53] *Id.* at 714 (noting that "when one party materially breaches a contract, the non-breaching party may 'treat the breach as a discharge of his contract liability.'") (quoting *Benemerito & Flores, M.D.'s, P.A. v. Roche*, 751 So. 2d 91, 93 (Fla. 4th DCA 1999)).
[54] Trustee's Ex. 9, p. 3, ECF 117-9 ("Regarding the sale of the machines- Gilmores have meet [*sic*] with an auction service and are ready to proceed.").

do so. The contract did not require Manown to list its real property at specific price, or for Frazier to have a say in selecting or approving the list price. The evidence shows that Manown chose the list price based on its realtor's recommendation, as required in the contract. Once Manown told Frazier's counsel that it had listed the real property for $300,000.00, Frazier was completely silent on that subject. Frazier's argument now that she was prejudiced when Manown failed to list the real property at a "reasonable" price in 2017 is unavailing.

## CONCLUSION

In support of Claim 4, Frazier successfully proved the existence of a contract as consideration for her Satisfaction of Judgment. The Trustee then presented evidence sufficient to rebut the validity of Frazier's claim by showing that Manown did not materially breach the contract. Because there was no material breach, Frazier's claim must be disallowed.

For the reasons stated, it is

ORDERED:

1. The Trustee's *Objection to Claim No. 4 Filed by Scott D. Hall Attorney at Law* (ECF No. 96) is SUSTAINED.

2. *Claim No. 4 Filed by Scott D. Hall Attorney at Law* is DISALLOWED in its entirety.

DONE and ORDERED on May 20, 2021.

KAREN K. SPECIE
Chief U.S. Bankruptcy Judge

Mary W. Colon, Trustee, is directed to serve a copy of this Order on interested parties and file proof of service within three (3) business days of entry of this Order.